376 So.2d 461 (1979)
John W. BUCKNER, M.D., Appellant,
v.
PHYSICIANS PROTECTIVE TRUST FUND, Appellee.
No. 79-182.
District Court of Appeal of Florida, Third District.
November 6, 1979.
*462 Montgomery, Lytal, Reiter, Denney & Searcy and Charles C. Powers, West Palm Beach, for appellant.
Blackwell, Walker, Gray, Powers, Flick & Hoehl and Raymond A. Reiser, Miami, for appellee.
Before HENDRY, HUBBART and NESBITT, JJ.
PER CURIAM.
The appellant, a physician, challenges the entry of the summary final judgment, the effect of which was to deny him coverage under a professional service policy issued by the appellee.
The appellee had denied coverage to Dr. Buckner after an action for slander had been initiated against him by Drs. Benavides and Schaubel. In that action, Drs. Benavides and Schaubel alleged that they had been slandered by Dr. Buckner and others, stating that:
During or immediately prior to the month of October, 1976, Defendants, acting in concert and in pursuit of mutual goals, spoke to reporters for The Miami Herald and maliciously charged Plaintiff with performing unnecessary and incompetent spinal surgery. Defendants intended and contemplated that said charges would appear in an article to be published by The Miami Herald.
The complaint went on to allege that the initial article containing the defendant's charges appeared in The Miami Herald on October 31, 1976. Drs. Benavides and *463 Schaubel further asserted that, as was foreseeable, defendant's charges were republished; specifically in The News and Courier, a South Carolina daily and four subsequent times in The Miami Herald.
In their claim for slander, they further contended that the charges were maliciously false and were intended to, were understood to and did refer to the plaintiffs. The complaint maintained that the defendants communicated these charges willfully, wantonly, maliciously, and either with knowledge of their falsity or in reckless disregard of the truth, with the express intent of discrediting the plaintiffs.
Under the professional service policy, appellee agreed:
[t]o pay on behalf of the Member all sums which the Member shall become legally obligated to pay as damages because of any claim or claims made against the member during the indemnity period arising out of the performance of professional services rendered or which should have been rendered... .
Under the indemnity agreement, professional services were defined as follows:
the rendering of or failure to render any service of a professional nature by a physician ... and shall be deemed to include ... the services by a Member as a member of a formal accreditation or similar board or committee of a hospital or professional society.
After the appellee denied coverage under the indemnity agreement, Dr. Buckner joined the appellee in a third party action pursuant to Fla.R.Civ.P. 1.180. In this action, Dr. Buckner alleged that:
At all times material herein, JOHN W. BUCKNER, M.D., was duly deputized pursuant to Florida Statutes 458.1201 by the Florida Board of Medical Examiners for the purpose of conducting an investigation into the conduct and competence of physicians and was at all times material hereto acting in the course and scope of his authority and in furtherance of the duty thereby imposed.
After discovery was completed, appellee filed a motion for summary final judgment alleging that the undisputed facts invoked the well established rule in Florida that the insurer is under a duty to defend a suit against an insured only where the complaint alleges a state of facts within the coverage of the insurance policy. National Union Fire Insurance Company v. Lenox Liquors, Inc., 358 So.2d 533 (Fla. 1977); Capoferri v. Allstate Insurance Company, 322 So.2d 625 (Fla.3d DCA 1975).
The evidence, developed by deposition, unmistakably demonstrated that Dr. Buckner conducted an informal press conference with newspaper reporters at his professional offices. Dr. Buckner admitted that he neither had authority nor was under instructions by the Board of Medical Examiners to conduct a conference. In his deposition, Dr. Buckner attempted to rationalize his holding of the press conference by claiming it to be in the public interest.
It is well settled that where a determination of liability depends upon a written instrument and its legal effect, the question is essentially one of law and is ordinarily determinable by the entry of summary judgment. National Luggage Services, Inc. v. Reedy Forwarding Company, Inc., 339 So.2d 305 (Fla.3d DCA 1976); Font v. Lazarus Homes Corporation, 339 So.2d 258 (Fla.3d DCA 1976); accord Shafer & Miller v. Miami Heart Institute, Inc., 237 So.2d 310 (Fla.3d DCA 1970) and Kochan v. American Fire and Casualty Company, 200 So.2d 213 (Fla.2d DCA 1967).
In the present case, the appellee's liability is dependent upon an interpretation of the provisions of the quoted indemnity policy and its legal effect. This is a question of law and is therefore appropriate for determination by summary judgment.
The original actions for slander involved intentional torts. Appellant had no authority and was under no instructions to hold a press conference regarding investigatory functions within the medical profession. The act of holding a press conference is not embraced in his duty as an investigator *464 and consequently did not constitute a "professional service" as defined by the indemnity agreement. Speaking to the reporters in the privacy of his own professional offices without authorization did not constitute "professional services" within the ambit of the policy definition.
We are not unmindful of the strident burden that a successful movant for summary judgment undertakes. However, since the essential question before the trial judge was one of interpretation or construction of the legal effect of a written document with undisputed facts, we think the trial judge properly undertook to dispose of the matter on summary judgment and having done so we agree with his interpretation.
The judgment appealed from is affirmed.