683 P.2d 440

**Bartley HIRST and Peggy Hirst as Guardians ad Litem of Mark Hirst, Plaintiff-Appellants Cross Respondents,**

v.

**ST. PAUL FIRE & MARINE INSURANCE COMPANY, a foreign corporation, Defendant-Respondent Cross Appellant.**

No. 14343.

Court of Appeals of Idaho.

May 15, 1984.

Rehearing Denied July 25, 1984.

Petition for Review Denied Sept. 12, 1984.

---

John T. Lezamiz, Hepworth, Nungester & Felton, Twin Falls, for plaintiffs-appellants-cross respondents.

J. Walter Sinclair, Benoit, Alexander & Sinclair, Twin Falls, for defendant-respondent-cross appellant.

WALTERS, Chief Judge.

Bartley and Peggy Hirst, as guardians ad litem of Mark Hirst, appeal from a partial summary judgment granted in favor of St. Paul Fire and Marine Insurance Company in an action upon an insurance policy. The district court ruled that certain conduct by Mark Hirst's doctor, William Donehue, and the harm which resulted from that conduct, was not covered under the terms of Donehue's professional liability insurance policy. Accordingly, the court held that the Hirsts were not entitled to recover from St. Paul the amount of damages specified in a settlement agreement between the Hirsts and Donehue.

On appeal, the Hirsts argue that the trial court erred in deciding that the insurance policy did not cover Donehue's actions. They also assert as error the district court's judgment limiting St. Paul's liability to damages arising from breach of its duty to defend the underlying claim against Donehue. As part of a settlement between Donehue and the Hirsts, Donehue's entitlement to recover such damages was assigned to the Hirsts. These damages were deemed by the court to consist only of the costs, expenses and attorney fees incurred by Donehue in defending and settling the Hirsts' causes of action. The damages did not include compensation for the underlying harm claimed by the Hirsts. Finally, the Hirsts request attorney fees on this appeal, pursuant to I.C. § 41–1839.

St. Paul also cross-appeals from the partial summary judgment entered in favor of the Hirsts. As noted, the court found that St. Paul had breached its contractual duty to defend Donehue. St. Paul raises the question whether there is a duty to defend an insured if the complaint filed against the insured does not state a ground for damages covered by the terms of the insurance policy.

We affirm the district court's ruling that the injuries suffered were not covered by the policy. We also affirm the court's ruling that St. Paul breached its duty to defend Dr. Donehue. Finally, we affirm the damages awarded by the district court. We award no attorney fees on appeal.

## I. The Facts

Dr. Donehue gave Mark Hirst a physical examination so that Hirst could participate in high school wrestling. Hirst later suffered a wrestling injury to a finger and thumb of one hand. After an initial consultation concerning the injury, Donehue asked Hirst to return a few days later. When Hirst returned, Donehue drugged him with valium and librax—two mild tranquilizers—and performed sexual acts, including oral sex and masturbation, on Hirst against Hirst's will. Donehue told Hirst that Hirst might also have mononucleosis. Donehue scheduled several more appointments at his office and at the Hirst home, for treatment of the injury and testing for mononucleosis. His sexual activities with Hirst recurred during each visit.

Mark Hirst and his parents presented a claim of medical malpractice to the Idaho State Board of Medicine, pursuant to I.C. § 6–1001, as a compulsory condition precedent to litigation of the claim. This process is informal and nonbinding. I.C. § 6–1001. A hearing panel, appointed pursuant to I.C. § 6–1002, determined that "there [was] no evidence of [Donehue] prescribing improper contra-indicated medication for [Hirst's] physical injuries or negligence in failing to follow proper standards of care in treating [Hirst's wrestling] injuries."

The panel did find evidence of Donehue's sexual advances. The panel determined that substantial questions were raised concerning whether the panel had jurisdiction over "this type of medical malpractice"—which it described as "unethical medical conduct." The panel noted that Donehue's actions were for his own personal satisfaction and that there is no general rule as to whether such conduct amounts to malpractice. The panel concluded that "if malpractice includes the immoral conduct and criminal acts complained of then ... the claim may have merit."

The panel unanimously stated that "prescribing excess dosages of improper and contra-indicated medication of Valium and Librax ... had no relation to treatment"

for Hirst's wrestling injuries. The panel determined that use of these drugs was to render Hirst susceptible to Donehue's actions or to cover up the sexual assaults. The panel found that this use of drugs was "clearly without justification and [was] not consistent with any applicable standard of health care." The panel unanimously concluded that this portion of the Hirsts' claim was meritorious.

The Hirsts brought suit against Donehue, alleging he had "committed various acts of negligence and professional malpractice." Donehue asked St. Paul to defend the suit, but St. Paul refused. Subsequently, the Hirsts and Donehue executed a written agreement to settle the Hirsts' claims. Donehue admitted that he had failed to meet the applicable community standard of care, see I.C. § 6–1012, and that he had committed various acts of medical or professional malpractice. The Hirsts agreed to settle all claims for $90,000, in return for execution by Donehue of a consent to judgment and for an assignment by Donehue of any and all of his causes of action arising out of the failure of St. Paul Fire and Marine Insurance Company, Donehue's insurer, to appear and defend the action. The Hirsts also agreed not to execute against Donehue, leaving the option of prosecuting an action against St. Paul to collect the amount of the judgment. The district court entered judgment for the Hirsts against Donehue in the sum of $90,000.

The Hirsts then brought the instant suit against St. Paul to collect on the insurance policy which was in force during Donehue's treatment of Mark Hirst. The policy covered damages resulting from the "providing or withholding of professional services." It also stated that St. Paul would defend any suit brought against Donehue for damages covered under this agreement.

After St. Paul answered, the Hirsts moved for partial summary judgment. They alleged St. Paul's breach of its duty to defend, Donehue's assignment to the Hirsts of his cause of action against St. Paul for the breach, and St. Paul's result-

ing liability for any reasonable settlement, costs and attorney fees incurred by Donehue. St. Paul also moved for summary judgment.

The district court granted partial summary judgment to both parties. The court decided that the Hirsts were entitled to summary judgment on the issue of St. Paul's duty to defend. For the purpose of resolving that issue, the court found that the original complaint against Donehue contained allegations which, if proved, could have brought the case within the coverage of the policy. On that basis, the judge awarded to the Hirsts the amount of attorney fees, costs and expenses which Donehue had incurred in defending and settling the initial action.

However, the court ultimately granted summary judgment in favor of St. Paul on the issue of coverage of the policy. The court held that Donehue's actions did not constitute the "providing or withholding of professional services." The court determined that the actions and injuries alleged in the complaint against Donehue were not covered by the terms of the policy, as a matter of law. Therefore St. Paul was held not liable for the substantive amount of the settlement agreed to by Donehue and the Hirsts. Although the court's rulings on the duty to defend issue and on the ultimate question of coverage under the policy may appear to be facially inconsistent, there is a distinction between those concepts. We will discuss that distinction later in this opinion.

On appeal from summary judgment, this court will determine whether a genuine issue of material fact remains to be decided, based on the pleadings and affidavits. I.R.C.P. 56(c); *Smith v. Thompson*, 103 Idaho 909, 655 P.2d 116 (Ct.App.1982). In making this determination, we will construe all allegations of fact in the record, and all reasonable inferences from the record, in the light most favorable to the party opposing the motion. *Id.* Upon the facts thus viewed we will determine whether either

party was entitled to judgment as a matter of law. I.R.C.P. 56(c); *Smith v. Thompson, supra.*

Here, neither party argues on this appeal that a genuine issue of material fact exists. The question of St. Paul's liability for Donehue's conduct and the question of liability for failure to defend are dependent upon interpretation of the provisions of the insurance policy and its legal effect. These are questions of law which are appropriate for determination by summary judgment. *Buckner v. Physicians Protective Trust Fund,* 376 So.2d 461 (Fla.App.1979). We must decide therefore only whether the parties were entitled to judgment as a matter of law.

II.   Coverage of the Policy

We address first the Hirsts' argument that the district court erred by concluding that Donehue's actions were not covered by the insurance policy. The insurance policy contains the following relevant provisions:

*How this agreement protects you.*—This agreement provides protection against professional liability claims which might be brought against you in your practice as a physician or surgeon.

.    .    .    .    .

*When you're covered.*—To be covered the professional service must have been performed (or should have been performed) after your retroactive date that applies.

.    .    .    .    .

*What this agreement covers.*—Individual coverage. Your professional liability protection covers you for damages resulting from:

(1) Your providing or withholding of professional services.

.    .    .    .    .

The Hirsts contend that the term "professional services," as it appears in this policy, includes all activities enumerated in the statutory definition of practice of medicine, I.C. § 54–1803.[1] That statute defines the

---

**1.** Idaho Code § 54–1803(1) defines "practice of medicine" as follows:

"(a) To investigate, diagnose, *treat,* correct.... ... [Emphasis added.]

practice of medicine for the purpose of licensure of persons so engaged. Characterizing Donehue's conduct as "mistreatment" of Mark through the use of prescription drugs, the Hirsts argue that Donehue's acts constituted the "practice of medicine" and therefore were "professional services." However, even if we assume that "professional services" embrace all enumerated activities within the "practice of medicine," including "treat[ment] [of] any human disease [or] injury," there still must be a causal relationship between such treatment and the harm alleged by the malpractice claimant. Here, as the district court noted, there was no specific showing in the record that Mark was damaged in any way simply from the administration of the drugs. Nor was there any showing that Donehue negligently treated the boy's injuries or illness. The district court found that, in spite of the Hirsts' general allegations, the action in reality was one in tort for sexual molestation and that the use of the drugs merely rendered Mark more susceptible to Donehue's "advances." We agree.

■ The scope of "professional services" does not include all forms of a doctor's conduct simply because he is a doctor. As noted by the Supreme Court of Nebraska:

The insurer's liability is thus limited to the performing or rendering of "professional" acts or services. Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind. The term "professional" in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. A "professional" act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual. [Citations omitted.]

In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself. [Citations omitted.]

*Marx v. Hartford Accident and Indemnity Co.*, 157 N.W.2d 870, 871–72 (Neb.1968). This same approach—looking to the *act* rather than the character of the actor—has been followed by other courts in determining liability for alleged professional services under insurance policies. *See Horn v. Burns & Roe*, 536 F.2d 251 (8th Cir.1976); *Mason v. Liberty Mutual Ins. Co.*, 370 F.2d 925 (5th Cir.1967); *Gulf Ins. Co. v. Gold Cross Ambulance Service Co.*, 327 F.Supp. 149 (W.D.Okla.1971); *Keepes v. Doctors Convalescent Center, Inc.*, 89 Ill. App.2d 36, 231 N.E.2d 274 (1967); *Tankersley v. Insurance Company of North America*, 216 So.2d 333 (La.App.1968); *Robertson v. Maher*, 177 So.2d 412 (La. App.1965); *D'Antoni v. Sara Mayo Hospital*, 144 So.2d 643 (La.App.1962); *Swassing v. Baum*, 195 Neb. 651, 240 N.W.2d 24 (1976).

■ Looking to the act which harmed Mark Hirst—and of which he really complains—we are unpersuaded that the intentional sexual assault constituted "professional services" under the provisions of the insurance contract. We hold the district court was correct in concluding that Dr. Donehue's actions were not covered by the policy.

### III. Duty to Defend

We turn next to the issues related to St. Paul's duty to defend the action instituted by the Hirsts against Donehue. As noted, Donehue's policy afforded coverage for liability arising from a patient's injuries or death which were caused by the providing or withholding of professional services. The policy also stated that St. Paul would defend any suit brought against Donehue for damages covered by the policy. We are thus confronted with two issues: (1) Was St. Paul obligated to defend the suit against Donehue? and (2) If so, what are

the recoverable damages for breach of that duty?

### A. Duty

As a general rule, an insurer must defend a suit against the insured where the complaint alleges facts which, if true, would bring the case within the policy coverage. *Pendlebury v. Western Casualty and Surety Co.*, 89 Idaho 456, 464, 406 P.2d 129, 134 (1965). In *Pendlebury* the insurance company, Western Casualty, had insured the liability of Blair Hammon for the operation of his vehicle by him or by anyone driving it with his permission. Hammon's employee, James Pendlebury, had permission to use the vehicle. While operating the vehicle, Mrs. Pendlebury was involved in a collision with a truck owned by Theron Brown. Mrs. Pendlebury died in the collision. Brown filed suit for damages to his truck, against Hammon and Pendlebury. James Pendlebury was named as a defendant both individually and as administrator of his wife's estate. The suit alleged negligence on the part of Mrs. Pendlebury. Western Casualty refused to defend Pendlebury, contending that Pendlebury had purchased the Hammon vehicle prior to the date of the accident—thereby eliminating any coverage under Hammon's policy. Pendlebury was forced to provide his own defense. At trial, it was held that Hammon was the owner of the vehicle and the court dismissed Brown's action as to Pendlebury. Pendlebury then sued Western Casualty to recover his attorney fees and costs incurred in defending the suit by Brown. On appeal, in upholding the award sought by Pendlebury, our Supreme Court said:

> In the Brown action Brown, in his amended complaint directed against Blair Hammon and against Pendlebury individually and as administrator of his wife's estate, alleged Mrs. Pendlebury's negligent driving of the automobile on October 27, 1958; the collision with Brown's truck and resulting damage; and the death of Mrs. Pendlebury. He then alleged that Mrs. Pendlebury was driving the automobile with the knowledge and consent of the defendants on community business of herself and husband, or on the business of Blair Hammon.
>
> The amended complaint thus stated a claim directed against Pendlebury, both individually and as administrator, or in the alternative against Blair Hammon, inasmuch as the automobile at the time was owned by Hammon. The surety company had insured the liability of Hammon growing out of his operation of the vehicle, or the liability of anyone driving it with his permission. The surety company was obligated under the terms of the policy as alleged in the complaint, to defend Pendlebury in both or either of the capacities in which he was sued, *simply because the allegations of the complaint pointed to the potential liability of the surety company to Pendlebury as an insured,* individually, or in a representative capacity.
>
> An insurer is obligated to defend even though the complaint fails to state a claim covered by the policy, where the facts of the case, if established, present a potential liability of the insured. Doubt as to the obligation of an insurer to defend should be resolved in favor of the insured. [Citations omitted and emphasis added.]

89 Idaho at 464, 406 P.2d at 133–134.

The rationale for placing the burden on an insurer to defend a complaint which presents a potential liability of the insured was discussed in *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178 (7th Cir.1980). There the court said:

> While it is true that an insurance company's obligation to defend depends upon the underlying complaint against its insured, this obligation, as noted previously, is present whenever there appears to be a *potential* for coverage under the policy. [Citations omitted.] ... Especially since the advent of notice pleading, in a case where there is doubt as to whether a theory of recovery within the policy coverage has been pleaded in the underlying complaint, the insurer must defend, and its defense obligations will

continue until such time as the claim against the insured is confined to a recovery that the policy does not cover. [Citations omitted.]

To hold otherwise would be to place upon the insured the burden of demonstrating in advance of the underlying litigation which of the competing theories of recovery against it was applicable for purposes of insurance, thereby frustrating one of the basic purposes of such a clause in the insurance contract—protection of the insured from the expenses of litigation. [Citations omitted and emphasis original.]

*Id.* at 1185.

Although the allegations in the plaintiff's complaint frame an insurer's duty to defend, those pleadings are not to be read narrowly. Rather, a court must look at the full breadth of the plaintiff's claim. As noted by the Hawaii Court of Appeals:

"We point out that the carrier must defend the suit which potentially seeks damages within the coverage of the policy; . . . .

[The defendant insurance company] cannot construct the formal fortress of the third-party's pleadings and retreat behind its walls. The pleadings are malleable, changeable and amendable . . . . courts do not examine only the pleaded word but the potential liability created by the suit. Since the instant action presented the potentiality of a judgment based upon nonintentional conduct, and since liability for such conduct would fall within the indemnification coverage, the duty to defend became manifest at the outset."

*Standard Oil Co. of Calif. v. Hawaiian Ins. & Guar. Co., Ltd.*, 2 Hawaii App. 451, 634 P.2d 123, 129 (1981) (quoting *Gray v. Zurich Insurance Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168, 176 (1966)).

■ It is also well established that the duty of an insurer to defend, for the protection of the insured, is a separate, unrelated and broader obligation than a duty to pay for damages under the insurance policy. *See Maneikis v. St. Paul Ins. Co. of*

*Illinois*, 655 F.2d 818 (7th Cir.1981) (applying Illinois law); *Solo Cup Co. v. Federal Ins. Co., supra; Howard v. Russell Stover Candies, Inc.*, 649 F.2d 620 (8th Cir.1981); *C.H. Heist Caribe Corp. v. American Home Assur. Co.*, 640 F.2d 479 (3d Cir. 1981); *St. Paul Fire & Marine Ins. Co. v. Sears, Roebuck & Co.*, 603 F.2d 780 (9th Cir.1979); *U.S. Fidelity & Guaranty Co. v. Louis A. Roser Co.*, 585 F.2d 932 (8th Cir.1978); *Alabama Farm Bureau Mutual Casualty Ins. Co. v. Moore*, 349 So.2d 1113 (Ala.1977); *Afcan v. Mutual Fire, Marine & Inland Ins. Co.*, 595 P.2d 638 (Alaska 1979); *Val's Painting & Drywall, Inc. v. Allstate Ins. Co.*, 53 Cal.App.3d 576, 126 Cal.Rptr. 267 (1975); *Paxton-Mitchell Co. v. Royal Indem. Co.*, 279 Or. 607, 569 P.2d 581 (1977); *Burnett v. Western Pac. Ins. Co.*, 255 Or. 547, 469 P.2d 602 (1970).

■ In their complaint against Donehue, the Hirsts alleged generally that Donehue had "committed various acts of negligence and professional malpractice." They alleged that Donehue "committ[ed] unauthorized, improper, unlawful and unprofessional acts upon plaintiff Mark Hirst; [made] sexual advances and perform[ed] improper sex acts . . . , prescrib[ed] contraindicated drugs and medication . . . to render Hirst susceptible to [Donehue's] actions . . . and fail[ed] to follow proper standards of care." Although these allegations later were determined not to be supported by the record, they stated a claim broad enough to include potential liability of St. Paul to Donehue as its insured, at the outset of the suit. *See Henry v. Johnson*, 191 Kan. 369, 381 P.2d 538, 544 (1963), *cited in Pendlebury, supra.* We affirm the district court's conclusion that St. Paul breached its duty to defend the suit.

### B. Liability

The next question, then, is the recovery to which the Hirsts may be entitled, flowing from St. Paul's breach of its duty to defend the Donehue suit. St. Paul's insurance policy stated: "We'll defend any suit brought against you for damages covered by this agreement. We'll do this even if

the suit is groundless or fraudulent." In considering St. Paul's duty under this provision, the court below adopted an approach recently announced by the Supreme Court of Alaska in *Afcan v. Mutual Fire, Marine and Inland Ins. Co.*, 595 P.2d 638 (1979). There the Alaska court was presented with an insurance provision similar to the one in the instant case. The provision in *Afcan* recited: "The Company *will* defend *any* suit against the insured seeking damages to which this insurance applies, even if *any* of the allegations of the suit are groundless, false, or fraudulent." [Emphasis added.] 595 P.2d at 645. The Alaska court approached the "duty to defend" issue from the same standpoint as did the Idaho court in *Pendlebury, i.e.,* whether the complaint stated a claim *potentially* within the coverage of the policy.

The Alaska court addressed the consequences of breach of the duty to defend. It said:

> When an insurer breaches the insurance contract by wrongfully refusing to defend its insured, the insurer will always be liable for the reasonable costs and attorney's fees subsequently incurred by the insured in the defense of the claim. [Citations omitted.] The insurer will also be liable for attorney's fees incurred by the insured in settling the claim. [Citations omitted.]

595 P.2d at 646. However, with respect to the liability of the insurer for the amount of the settlement entered into by the insured, after the insurer refused to defend the action, the Alaska court held:

> [W]here an insurance company has wrongfully refused to defend, it may nevertheless in a subsequent action on the policy attempt to show that the liability is not covered by the policy, where liability is imposed by a settlement agreement in a case involving both claims within policy coverage and claims not within policy coverage. If such liability *is* subsequently found to be covered by the policy, the insurer may then be held liable, at least up to the policy limits, for the full amount of any obligation reason-

ably incurred by the insured in the settlement. If, however, the liability of the insured is found not to be within the coverage of the policy, the insurer is not liable for obligations incurred by the insured in a settlement, even though the settlement is reasonable. [Emphasis original.]

595 P.2d at 647.

The Hirsts urge that we should adopt an alternative to the *Afcan* approach. They cite what might be characterized as the "Illinois rule." That rule holds that where the insurer violates its duty to defend, the insurer is estopped to deny coverage—thereby invoking the following broad measure of damages to the insured: (1) the costs of defending the suit; (2) the amount recovered from the insured, either by way of judgment or settlement; and (3) any additional damages caused by the insurer's breach of contract. *See,* for a recitation of the elements of the Illinois rule, *Solo Cup Co. v. Federal Ins. Co.*, 619 F.2d 1178 at 1184 (7th Cir.1980).

We decline to adopt the Illinois rule. We question the propriety of utilizing a form of estoppel as a punitive measure against an insurer for breach of a contractual duty to defend. Rather, we believe the sanctions for that breach should be governed by ordinary principles of contract law. In Idaho, the purpose of awarding damages for breach of contract is to fully recompense the non-breaching party for its losses sustained because of the breach, not to punish the breaching party. *Anderson v. Gailey*, 100 Idaho 796, 606 P.2d 90 (1980). Here the attorney fees and costs incurred by Dr. Donehue, as a result of the refusal of St. Paul to assume the defense in the suit by the Hirsts against him, were properly recoverable as damages for breach of contract. We hold the district court below did not err in holding St. Paul responsible for those expenses.

### IV. Request for Attorney Fees

The Hirsts have requested an award of attorney fees on this appeal, pursuant to I.C. § 41–1839. That section provides that

"[a]ny insurer ... which shall fail for a period of thirty (30) days after proof of loss has been furnished ... to pay ... the amount justly due under such policy ... shall in any action thereafter brought ... for recovery under the ... policy ... pay such further amount as the court shall adjudge reasonable as attorney's fees on such action." The Idaho Supreme Court has awarded attorney fees on appeal pursuant to that section. *Bonner County v. Panhandle Rodeo Association, Inc.*, 101 Idaho 772, 620 P.2d 1102 (1980). However, in this case, because there was no coverage of Donehue's acts under the insurance policy, there could be no "amount justly due" under that policy. Of course, there was a breach of the insurer's duty to defend; but we do not construe damages for breach of that duty to be the type of "loss" specified in § 41–1839. *Compare Shields v. Hiram C. Gardner, Inc.*, 92 Idaho 423, 444 P.2d 38 (1968) (allowing award of attorney fees on appeal where insurer both wrongfully denied coverage of a loss and breached a duty to defend.) If this statute is to be broadened, it should be by act of the Legislature, not by judicial construction. Therefore, no attorney fees are awarded to the Hirsts on this appeal.

We affirm the award of partial summary judgment rendered in favor of the Hirsts for St. Paul's breach of its duty to defend. We also affirm the partial summary judgment entered in favor of St. Paul holding that there was no coverage under the policy for damages resulting from Donehue's misconduct. Each party will bear its own costs and fees on appeal.

BURNETT, J., concurs.

SWANSTROM, Judge, concurring specially:

I concur fully in the foregoing opinion except as to part IV. As to part IV, I concur in the result only.