Decided   April 15, 1989

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

TOKIO MARINE & FIRE INSURANCE )  DCA No. 88-9018
COMPANY, LTD.,                 )  CTC No. 87-462
                               )
        Plaintiff/Appellee,    )
                               )
        v.                     )
                               )
MARIANAS OCEAN ENTERPRISES,    )       OPINION
INC.,                          )
        Defendant/Appellant    )
_____)

Attorney for Appellant:        JUAN T. LIZAMA
                               Attorney at Law
                               P.O. Box 1508
                               Saipan, MP  96950
                               Telephone:  (670) 234-7220

Attorney for Appellee:         THOMAS C. STERLING
                               Attorney at Law
                               Suite 1008 PDN Building
                               238 O'Hara Street
                               Agana, Guam 96910
                               Telephone:  (670) 477-7857

BEFORE:   MUNSON, and HILL,[*] District Judges, and VILLAGOMEZ,[**]
          Judge.

HILL, DISTRICT JUDGE:

    Marianas Ocean Enterprises, Inc. ("MOE"), the insured,

appeals the grant of summary judgment to its liability insurer,

Tokio Marine & Fire Insurance Co., Ltd.  ("Tokio").  The trial

court granted summary judgment to the insurer, holding that the

----

[*]    The Honorable Irving Hill, Senior Judge, United States
       District Court for the Central District of California,
       sitting by designation.

[**]   The Honorable Ramon G. Villagomez, Judge, Commonwealth
       Trial Court, sitting by designation.

"professional services" endorsement attached to the policy excluded coverage for the acts of MOE's employees alleged in a wrongful death action filed against MOE. We reverse and remand the case for a trial.

## FACTS

Although it also had other businesses, MOE's principal business was scuba diving instruction and diving excursions on Saipan. Tokio had insured MOE since 1980. Its coverage explicitly included "marine tour and fishing operations, including diving." Until 1984, the policy limit was $50,000 for each person and $100,000 for each accident.

In 1984 MOE asked that the policy limits be enlarged to $300,000 per person and $500,000 per accident. Tokio raised the limits as requested beginning with its 1984-85 policy. In so doing Tokio charged a slightly higher premium and added to the policy a so-called "professional services" endorsement (labelled "Endorsement #2") which provided that

> the insurance does not apply to bodily injury or property damage caused by any act, error or omission of the insured, or of any person for whose acts the insured is legally liable, and arising out of the performance of <u>professional services for others</u> in the insured's capacity as marine tour operator. (Emphasis added).

The coverage language of the policy was also changed to provide that the coverage included "diving (subject to special endorsement attached)".

Upon receipt of the 1984-85 policy, the first containing the new endorsement, MOE's managing director, Mr. Yamagishi contacted

**750**

Tokio to request an explanation of the exclusionary language. Yamagishi is apparently not proficient in English. The explanation he received from Tokio's general agent was oral and was apparently in English. It did not satisfy him. Yamagishi then requested that he be given a further explanation in Japanese of the coverage and the exclusionary language. Tokio's Guam representative, Mr. Ogura, attempted to explain the exclusionary language in a letter to Yamagishi written in Japanese. Still dissatisfied, Yamagishi requested that Ogura come to Saipan personally to explain the new endorsement. Ogura did so in March 1984. Tokio heard nothing more from him and Endorsement #2 was included in identical language in the annual policies for both 1985-86 and 1986-87.

Yamagishi's testimony about the inclusion of Endorsement #2 and his several attempts to question and ascertain its meaning, were a part of the record in the summary judgment proceedings. He testified that after the various explanations and conversations he was of the belief that MOE was still covered for acts of ordinary negligence in its diving operations.

Tokio added to MOE's 1986-87 policy an additional endorsement containing further exclusionary language applicable to diving activity. This is referred to as "Endorsement #3." It unequivocally stated that "all underwater activities including scuba diving is [sic] excluded under this policy." MOE alleges that Tokio Marine added Endorsement #3 to the 1986-87 policy without informing MOE of its inclusion.

On November 2, 1986, during the 1986-87 policy year, a Mr. Ikewaki died while participating in a diving excursion operated by MOE. Ikewaki's personal representative filed a wrongful death action in the Commonwealth Trial Court against MOE on June 23, 1987. The complaint in that action asserted that although MOE's agents knew Ikewaki was an inexperienced diver, they "equipped him with diving apparatus, and led him into the ocean deep water without proper instruction in the use of the equipment; and without proper supervision and guidance while using the equipment in the deep waters of the open sea." Tokio Marine defended the action on behalf of MOE under a complete reservation of rights.

On July 28, 1987, Tokio filed the instant action in the Commonwealth Trial Court against MOE seeking a declaratory judgment that coverage did not exist under the policy. The wrongful death action was thereafter settled.

Following the settlement, Tokio moved for a summary judgment in the instant case arguing that both Endorsement #2 and #3 excluded coverage for accidents of the type involved in the wrongful death action. The trial court granted the motion relying exclusively on Endorsement #2. The trial court held that Endorsement #2 in and of itself, excluded coverage and it was thus unnecessary to resolve the dispute of whether Endorsement #3 was validly in effect at the time of Ikewaki's death.

With respect to Endorsement #2 the trial court specifically held that the term "professional services" contained in that endorsement was unambiguous. The trial court went on to hold

752

that the unambiguous language of the endorsement excluded coverage for employees' acts of the type involved in the wrongful death action. The trial judge therefore did not consider, and apparently regarded as irrelevant, Yamagishi's testimony concerning his discussions about the meaning of Endorsement #2 with Tokio's representatives and his expectation and understanding that it did not exclude coverage for diving operations of the type being conducted when the accident happened.

## DISCUSSION

The trial court's holding that Endorsement #2 was unambiguous is a conclusion of law. United State v. Sacramento Mun. Util. Dist., 652 F.2d 1341 (9th Cir. 1981). Our review of such determinations is de novo. Id. We hold that the trial court erred in making that holding.

A term is ambiguous if it is reasonably susceptible of more than one construction or interpretation. Casteneda v. Dura-Vent Corp., 648 F.2d 612, 619 (9th Cir. 1981).

In our view the term "professional services" per se is ambiguous, and was clearly so as used in this policy. The trial judge defined the term "professional services" to include occupations "applying specialized knowledge and intellectual skills to the performance of their duties." He amplified this definition by stating that the occupation must involve the exercise of "labor or skill" which "is predominately mental or intellectual rather than physical or manual."

753

In our view, the term "professional services" when used in any contractual context might well be considered ambiguous. Many lay persons would regard "professionals" as being limited to the traditional learned professions such as physicians, lawyers and accountants.[1]

The trial judge construed the term "professional" to extend far beyond the traditional learned professions. He applied it to any occupation calling for predominately mental or intellectual skill and effort, as compared with the physical or manual activity required. As so defined, the term is obviously ambiguous. When so defined, the term would include within its ambit, office workers such as bookkeepers, computer operators and executive secretaries whose work is predominately mental or intellectual.

This emphasizes the inherent ambiguity in the term "professional services" and the general unsuitability of the trial judge's definition. When one considers that this case involves the use of the term in the particular insurance policy at issue, which has reference to the work done by employees of this particular entrepreneur, the ambiguity of the term becomes even more clear. A diving instructor or diving tour guide may or may not meet the trial judges' definition. The trial judge made

---

[1] It is noteworthy that even when dealing with a practitioner of one of the traditional professions, such as a physician, a particular act performed by him or her can be the subject of a substantial dispute as to whether that act involves a "professional service." See, e.g., Hirst v. St. Paul Fire & Marine Ins. Co., 683 P.2d 440, 444 (Idaho App. 1984).

754

no analysis of whether the work of such persons was predominately intellectual or mental. Instead, when discussing these particular occupations, the trial judge seemed to adopt a different definition for "professional services", i.e., that such instructors and guides are "certified" by some certifying group or organization. This definition is likewise unworkable. Certifications of various sorts are available from private or public sources for purveyors of all kinds of services, including plumbers, electricians and pest control men, none of whom would qualify as "professionals." That factor underscores the ambiguousness of the term in question.

To summarize, the error of law committed in the trial court, i.e., holding the term "professional services" to be unambiguous requires reversal of this summary judgment. Extrinsic evidence presented at a trial will be required to determine the meaning of "professional services" as used in the policy at issue.

The judgment below is REVERSED and the case is REMANDED for trial.

DATED: *April 15, 1989*

_____
ALEX R. MUNSON, District Judge

_____
IRVING HILL, District Judge

_____
RAMON G. VILLAGOMEZ, Judge

755