The ST. PAUL INSURANCE COMPANY OF ILLINOIS, a corporation, Plaintiff,

v.

Joe G. CROMEANS, et al., Defendants.

Civ. No. 88–HM–5048–NE.

United States District Court, N.D. Alabama, Northeastern Division.

Feb. 21, 1991.

---

**350**

Stephen V. Hammond, Chenault Hammond Buck & Hall, Decatur, Ala., for St. Paul Ins. Co. of Illinois.

James S. McGinty, Scottsboro, Ala., David C. Johnson, J. Steven Mobley, Johnson & Cory, P.C., Birmingham, Ala., for Joe G. Cromeans.

Daniel F. Aldridge, Brinkley Chestnut & Aldridge, Robert H. Ford, Huntsville, Ala., for Jennifer Venable and Paula Graves.

## MEMORANDUM OF DECISION

HALTOM, District Judge.

The above entitled declaratory judgment civil action is before the Court upon the [submitted] amended motion of defendant THE ST. PAUL INSURANCE COMPANY OF ILLINOIS, a corporation ["ST. PAUL"] for full summary judgment [or alternatively for partial summary judgment] in its favor and against its insured JOE G. CROMEANS who is a medical doctor in Scottsboro, Alabama and a designated defendant in this case along with defendants Jennifer Venable and Paula Graves[1] who are the plaintiffs in the underlying lawsuit in the Circuit Court of Jackson County, Alabama against the defendant [Dr.] Joe G. Cromeans that is the basis for this declaratory judgment action. In and by this summary judgment proceeding the plaintiff ST. PAUL seeks a declaratory summary judgment that it has no legal duty or obligation or liability to defendant [Dr.] Joe G. Cromeans under the ST. PAUL policy of insurance issued by it to the defendant [Dr.] Cromeans on or about April 20, 1987 extending his coverage under the ST. PAUL professional liability insurance policy then in effect from May 1, 1987 to November 1, 1987 for any loss he has sustained or may hereafter sustain or suffer as a result of the civil complaint filed against him in the Circuit Court of Jackson County, Alabama or elsewhere by the defendants Jennifer Venable and Paula Graves. Additionally, ST. PAUL seeks declaratory summary judgment that it is not obligated to defend or provide a defense for [Dr.] Joe G. Cromeans in the above-referenced state court civil action. ST. PAUL's alternate motion for partial summary judgment is a "fallback" position in event this Court determined that the facts and law were such that ST. PAUL was legally obligated to defend or provide *defense* for [Dr.] Cromeans in the state court civil suit although at a later date the Court might find in favor of ST. PAUL and declare that its coverage did not include an obligation to pay and satisfy any judgment or judgments obtained by Jennifer Venable and/or Paula Graves against [Dr.] Cromeans.

Upon consideration of plaintiff ST. PAUL's motion for summary judgment above-referenced, all submitted evidentiary matter in support thereof[2] and in opposition thereto,[3] the pleadings, briefs and ar-

---

1. Venable and Graves are or were minors who are still represented in this declaratory judgment action by Attorney Daniel F. Aldridge as their appointed Guardian Ad Litem. This summary judgment record shows that both of these female defendants have married and are to be considered now as adult defendants. An appropriate order will be entered in this case discharging the Guardian Ad Litem.

2. The trial transcripts of the three criminal proceedings out of which the civil action underlying this declaratory judgment action arose; affidavit of Dr. Stephen B. Henderson; affidavits of the nine Home Office Liability Managers of St. Paul; affidavit of Timothy Lee Graham; and depositions of Jennifer Venable McIntire and Paula Graves Hastings.

3. This Court has carefully reviewed all evidentiary matter offered by the three defendants in opposition to St. Paul's motion for full summary judgment and alternatively for partial summary judgment, including: [1] the exhibit submitted by the defendants Jennifer Venable and Paula Graves through their counsel of record on or about June 12, 1989 which the Court has treated as a Confidential Document as requested by counsel of record for defendants Jennifer Venable and Paula Graves; [2] copy of the June 28, 1989 Order of the Medical Licensure Commission of Alabama in case No. 87–003 in re "Ala-

gument and applicable law, the Court is of the opinion that the plaintiff ST. PAUL's motion for full summary judgment in this declaratory judgment civil action is due to be granted and that a declaratory judgment should forthwith be entered in this case ordering, adjudging and declaring: [1] That the plaintiff ST. PAUL is under no obligation, duty or liability to its insured Dr. Joe G. Cromeans [one of the defendants herein] under the ST. PAUL policy of insurance issued by it to the defendant Cromeans on or about April 20, 1987 extending his coverage under the terms of the ST. PAUL professional liability insurance policy then in effect from May 1, 1987 to November 1, 1987 for any loss he has sustained or may hereafter sustain or suffer as a result of the civil complaint or complaints filed against him in the Circuit Court of Jackson County, Alabama or elsewhere by the defendants Jennifer Venable and Paula Graves; [2] that ST. PAUL is not legally responsible for or legally obligated in any way to pay under its professional liability policy issued to Dr. Joe G. Cromeans above-referenced or otherwise, any monetary judgment or judgments which defendants Jennifer Venable and/or Paula Graves may have previously secured or may hereafter secure in the Circuit Court of Jackson County, Alabama or elsewhere against [Dr.] Joe G. Cromeans by reason of his alleged sexual mistreatment of the defendants Jennifer Venable and/or Paula Graves; and [3] that ST. PAUL is not legally obligated under its professional liability policy issued to the defendant [Dr.] Cromeans hereinabove referenced to defend the defendant [Dr.] Joe G. Cromeans or to provide a defense for him in the above-referenced civil actions instituted against him by the defendants Jennifer Venable and Paula Graves in the Circuit Court of Jackson County, Alabama.

## [SUMMARY OF THE FACTS]

Jennifer Venable and Paula Graves, the plaintiffs in the underlying civil action

bama State Board of Medical Examiners vs. Joe Graham Cromeans, M.D." submitted by counsel of record for [Dr.] Cromeans on August 18, 1989; and [3] the exhibits referenced in the

against Dr. Cromeans in the Circuit Court of Jackson County, Alabama, have testified in three prior criminal cases against Dr. Cromeans, a juvenile case and two jury trials appealing a judgment of guilty by the juvenile judge. Additionally, the plaintiff took the depositions of the two juveniles on May 31, 1989 in this case, in which they confirmed the allegations made in the criminal trials. Graves dep., pp. 9–39; Venable dep., pp. 8–18. Essentially, the two girls complain of sexual mistreatment at the hands of Dr. Cromeans. Graves dep., p. 44. The specific acts complained of have been enumerated in plaintiff's original brief:

1. Masturbating in front of the girls;

2. Removing his clothes in their presence;

3. Attempting, sometimes successfully, to get them to remove their clothes;

4. Filming them while they were naked;

5. Attempting, unsuccessfully, to get them to have sex with him, to touch him in his genital area, and to have oral sex with him;

6. Fondling them; and

7. Giving them controlled substances and beer.

## [SUMMARY OF ST. PAUL'S ARGUMENT]

ST. PAUL rests its argument on three grounds:

1. To insure such conduct would be against the public policy of the State of Alabama;

2. Insuring such conduct was not within the contemplation of either party when the contract was begun;

3. The acts complained of do not constitute "professional services" as described in the contract of insurance.

Factual Allegations for Defendant Cromeans' Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, etc.

[THE PUBLIC POLICY ARGUMENT]

 All contracts insuring against intentional misconduct are void in the State of Alabama as against public policy. A succinct statement of this principle of law is found in *Fidelity–Phenix Fire Ins. Co. of New York v. Murphy*, 226 Ala. 226, 146 So. 387 (1933):

> There can be no valid insurance coverage which will protect or indemnify the insured or indemnitee against a loss which he may purposely and willfully create, or which may arise from his *immoral, fraudulent, or felonious conduct.* Such an express contract of insurance or indemnity is void as against public policy.

This is the law in Alabama today. *See St. Paul Ins. Companies v. Talladega Nursing Home*, 606 F.2d 631, 634–635 (5th Cir. 1979).

Defendant Cromeans cites *State Auto. Mutual Ins. Co. v. McIntyre*, 652 F.Supp. 1177 (N.D.Ala.1987), for the proposition that a specific intent to injure the juveniles is required to void the insurance policy. Counsel of record for ST. PAUL argues at pp. 3–4 of its Supplemental Brief that *McIntyre* is inapposite, for the following reasons:

1. The *McIntyre* case involved the interpretation of an exclusion in a homeowner's policy, excluding bodily injuries "expected or intended by the insured." The entire analysis focused on the language of this exclusion and did not reach the public policy argument at all. *Id.* at 1220.

2. Because plaintiff is resting its argument on general principles of Alabama law relating to public policy, Dr. Cromeans' specific intent to injure the two girls is not a factual issue to be determined by this court. The exclusionary language in the *McIntyre* insurance policy forced the court to view the intent to cause bodily injuries from the standpoint of the insured, thus logically producing the result. Because Dr. Cromeans' alleged conduct was patently immoral and intentional and because the public policy of Alabama prohibits the insuring of such conduct, no *McIntyre* analysis in (sic) required in this case.

Actually, the principle of Alabama law that a home owner's insurer has the burden of showing that the injuries were "expected" or "intended" by the insured for the purpose of invoking the policy exclusion language played a most significant part in the *McIntyre* decision. In any event this Court does not consider *McIntyre* to be in point or legally relevant to the issues in this summary judgment proceeding and so holds.

[SEXUAL ABUSE NOT WITHIN CONTEMPLATION OF THE PARTIES]

ST. PAUL's professional liability policy issued to [Dr.] Joe G. Cromeans was intended by the insurer and the insured to cover the insured doctor for injuries he negligently or wantonly caused while medically treating or attempting to medically treat a patient for a medical ill but not for intentional actions taken by the insured doctor directed to or towards the patient to satisfy the doctor's sexual lust or to otherwise further his own prurient interests.

It simply cannot be logically or plausibly argued or held that the conduct of which [Dr.] Joe G. Cromeans is accused of with respect to the two juvenile females in question was contemplated by either the insurer or the insured as an "insured incident" when the ST. PAUL professional liability policy was entered into by the parties. See the affidavits of the nine Home Office Liability Managers submitted as Exhibits 6–14 to ST. PAUL's response to this Court's discovery order of April 28, 1989.

[THE ACTS COMPLAINED OF DO NOT CONSTITUTE "PROFESSIONAL SERVICE"]

ST. PAUL submits that it is the *act*, not the relationship between the parties, that should warrant the attention of the court. Counsel for ST. PAUL submit that the leading case in this regard is *Hirst v. St. Paul Fire & Marine Ins. Co.*, 106 Idaho 792, 683 P.2d 440 (App.1984), which they argue is factually indistinguishable from

the present case. In *Hirst,* drugs were given to the patient in order for the doctor to induce the minor child to have sex with him. The *Hirst* court looked to the *act* itself, an intentional sexual assault, and *determined that such activity could not constitute the rendering or withholding of professional services.*

The *Hirst* court quoted an oft-used definition of "professional services" from *Marx v. Hartford Accident and Indemnity Co.,* 157 N.W.2d 870 (Neb.1968).

> The scope of "professional services" does not include all forms of a doctor's conduct simply because he is a doctor ... Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as exacts the use or application of special learning or attainments of some kind ... In determining whether a particular act is of a professional nature or a "professional service" we must look not to the title or character of the party performing the act, but to the act itself.

*Id.* at 871–72.

The acts complained of in both *Hirst* and the instant case are acts that can be accomplished by laypersons untrained in the medical arts. They are acts that do not require special training, learning or attainments. The fact that the acts occurred between a doctor and a patient or former patient is pertinent *only if the act itself is of a professional nature.*

Every case that has considered this issue has determined that sexual abuse does not constitute the rendering or withholding of "professional services," except *St. Paul Fire & Marine Ins. Co. v. Asbury,* 149 Ariz. 565, 720 P.2d 540 (App.1986). As pointed out in ST. PAUL's brief, the *Asbury* case relies *exclusively* on the cases in which a psychiatrist or psychologist failed to properly handle the "transference phenomenon," a medically recognized condition.

Additionally, ST. PAUL correctly maintains that the *Asbury* case is a poorly reasoned decision in that it held that massaging a woman's clitoris was intertwined with and inseparable from a gynecological examination. The *Asbury* court apparently attempts to distinguish *Hirst* (and its progeny) by the *location* of the various parts of the anatomy.

> Most of the cases cited to us by St. Paul are distinguishable because the tortious sexual abuse of the patient was not intertwined with and inseparable from the services provided. One example of non-covered sexual abuse not related to treatment is the case of *Hirst v. St. Paul, supra,* where a physician's sexual molestation occurred with a patient who was being treated for hand injuries suffered in a wrestling match.

*Id.* 149 Ariz. at 567, 720 P.2d at 542.

Moreover to this point, the *Asbury* court seems to be saying that if the physician is treating a *sexual* part of the patient's body (or a part near thereto) and commits sexual abuse by improperly manipulating or stroking the patient in the same general area, it is thus "intertwined" with treatment and ipso facto there is insurance coverage. ST. PAUL argues and this Court agrees that this "Asbury" reasoning is illogical. Moreover, this Court expressly declines to follow *Asbury* and chooses to follow *Hirst* and progeny and the other authorities favorably cited in making its ruling in this case.

ST. PAUL has offered the affidavit of Dr. Stephen B. Henderson, a family practitioner in Madison and Marshall Counties, Alabama, neighboring counties to Jackson County, Alabama. Dr. Henderson testifies that he read the transcript of the testimony of Paula Graves and Jennifer Venable during the July, 1987 criminal trial of Dr. Cromeans. He recounted in his affidavit the alleged actions taken against these female defendants and of which they complain in the underlying civil action in the Circuit Court of Jackson County, Alabama. *Dr. Henderson concludes and states in his affidavit that such actions bear no relation to medical treatment and that they could not have been unintentionally or carelessly done.* Further, this medical expert witness states in his affidavit that such acts require no special learning or attainments in the medical field or any

specialized knowledge, labor or skill as a medical professional. They amount, Dr. Henderson concludes and states in his affidavit, to no more than intentional sexual abuse of the young females. To this date no counter-affidavit from an expert medical witness has been offered by the defendants.

For the reasons stated above, the Court is of the considered judgment and holds that ST. PAUL's motion for full summary judgment in the above entitled civil action is due to be granted and that a declaratory judgment in the format and content above-referenced, ante pp. 350–351, should be forthwith entered.

An appropriate order and/or orders will be forthwith entered in conformity with the views hereinabove expressed.

DONE and ORDERED.