Argued and submitted September 28, 1998, reversed and remanded for entry of judgment for appellant February 17, respondent's petition for reconsideration filed March 1 allowed by opinion April 14, 1999
See 159 Or App 660 (1999)

## Shaun HEDMANN, M.D.,
*Appellant,*

*v.*

## LIBERTY MUTUAL FIRE INSURANCE COMPANY,
a Massachusetts corporation,
*Respondent.*

(9708-06259; CA A100556)

974 P2d 755

Sean Donahue argued the cause for appellant. With him on the briefs was Donahue & Associates.

Leslie A. Kocher argued the cause for respondent. With her on the brief were Roderic S. MacMillan and MacMillan, Scholz & Marks, P.C.

Before Landau, Presiding Judge, and Wollheim, Judge, and Rossman, Senior Judge.

ROSSMAN, S. J.

Landau, P. J., concurring.

## ROSSMAN, S. J.

The interesting question presented by this case is whether Liberty Mutual Fire Insurance Company (defendant) has a duty to defend plaintiff, who is a physician, under the applicable terms of plaintiff's homeowners' and catastrophe policies with defendant in an underlying personal injury lawsuit. McIntosh, a 27-year-old woman, filed the underlying complaint against plaintiff, alleging that, outside of his medical practice, plaintiff negligently prescribed a drug for her "so as" to maintain a sexual relationship with her and exert control over her. The parties filed cross-motions for summary judgment. The trial court granted defendant's motion for summary judgment. Because we conclude that there was a duty to defend, we reverse and remand for entry of judgment for plaintiff.

The contrasting contentions of the parties are direct and straightforward. Plaintiff maintains that the allegations in the underlying lawsuit can reasonably be interpreted to include an incident within the coverage of the policies. Defendant maintains that plaintiff's prescription of medication is a professional act within the "professional services" exclusion of the policies and that, therefore, there is no duty to defend. The trial court agreed with defendant, granted defendant's motion for summary judgment, and entered a final judgment for defendant. It is from that ruling that plaintiff appeals.

As the parties agree, this case turns on a reading of three documents: the complaint filed in the underlying lawsuit and the two insurance policies. McIntosh's complaint against plaintiff alleges that plaintiff is a physician specializing in cardiology and a shareholder of Northwest Permanente, P.C., and provided medical care to members of Kaiser Foundation Health Plan of the Northwest. It alleges further that McIntosh has never been a member of Kaiser Foundation Health Plan. The complaint alleges that for approximately one year plaintiff negligently prescribed Xanax for McIntosh in order to maintain a sexual relationship with her and control her, causing her "extreme and permanent psychological damage, emotional damage and distress."[1]

---

[1] The complete allegations of negligence are:

We turn to the specific language in the policies. Defendant sold plaintiff two insurance policies, a Liberty-guard Deluxe Homeowners' Policy and a Libertyguard Personal Catastrophe Liability Policy. The homeowners' policy includes coverage for "personal liability" but contains the following exclusion:

> "1.    **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to 'bodily injury' or 'property damage' "
>
> "\* \* \* \* \*
>
> "d.    Arising out of the rendering or failure to render professional services."

Plaintiff's catastrophe policy provides excess personal liability insurance coverage, but contains virtually identical exclusionary language:

> "This policy does not apply to **personal injury** or **property damage**:
>
> "\* \* \* \* \*
>
> "c.    arising out of the rendering or failure to render **professional services**."

"Professional services" is defined as "any services of a recognized profession."

■    In determining whether an insurer has a duty to defend, we must assume the truth of the allegations of the complaint. *Isenhart v. General Casualty Co.*, 233 Or 49, 54, 377 P2d 26 (1962). The sole question here is whether the alleged acts of negligence are excluded from coverage under

---

"A.    Prescribing Xanax for plaintiff;

"B.    Maintaining a sexual relationship with someone for whom he was prescribing an addictive prescription drug product;

"C.    Prescribing Xanax without any medical indication;

"D.    Prescribing Xanax without a history and physical exam;

"E.    Prescribing Xanax while knowing and having reason to know that plaintiff was prone to become addicted to the drug;

"F.    Prescribing Xanax for the purpose of maintaining sexual control over plaintiff;

"G.    Prescribing Xanax after plaintiff's discharge from Hooper Dadoes Center."

the professional services exclusions. Although plaintiff has presented us with well-reasoned cases from other jurisdictions to aid in our decision,[2] we believe the answer can be found in this state's case law.

■　In *Ledford v. Gutoski*, 319 Or 397, 877 P2d 80 (1994), the Oregon Supreme Court held that an insurer has a duty to defend an action if, based solely on the allegations of the complaint against the insured and the terms of the policy, there is *any basis* for coverage. "Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Id.* at 400. Thus, if the allegations in the complaint can reasonably be interpreted to allege an incident within the coverage of the policy, then the insurer is obligated to defend.

■　Defendant says that the act of prescribing medication is a "quintessential" service of the medical profession and is therefore a professional service excluded from coverage. We take a broader view of what it is that plaintiff is alleged to have done. Certainly we would agree that a doctor who prescribes medication *in the course of providing medical treatment* is providing a medical service and, hence, a professional service. Here, however, the act cannot be characterized as providing medical treatment. Rather, the alleged wrongdoing was the use of a prescription drug to seduce and subjugate McIntosh. The fact that plaintiff carried out the deed through the prescription of drugs does not make his act a service of the medical profession. It is, in a manner of speaking, "drugs for sex."

A professional service is an act taken in the context of the person's profession.[3] As alleged in the complaint, plaintiff was not McIntosh's physician and could not have been,

---

[2] *Standard Fire Insurance Co. v. Blakeslee*, 54 Wash App 1, 771 P2d 1172 (1989); *Hirst v. St. Paul Fire and Marine Ins. Co.*, 106 Idaho 792, 683 P2d 440 (1984).

[3] Contrary to the suggestion of the concurrence, *Multnomah Co. v. Oregon Auto. Ins. Co.*, 256 Or 24, 470 P2d 147 (1970), says nothing about whether the purpose or motivation for an act is relevant to the issue of whether the act is a professional service. Nor does it hold, by implication, that the alleged purpose of the act should not be considered in determining whether the allegations could reasonably be read to fall within the coverage of the policy. We have endeavored to focus on the nature and character of the act, which in many instances necessarily includes the insured's reason for acting.

because his practice was with Northwest Permanente, and McIntosh was not a member of the Kaiser Foundation Health Plan. As alleged in the complaint, plaintiff prescribed Xanax, not as McIntosh's physician, but so as to enable him to have a sexual relationship with her and control her. As reasonably interpreted, the nature of the alleged acts of misconduct could reasonably be understood to fall outside the policy exclusions for professional services; the trial court therefore erred in ruling that defendant had no duty to defend.

Reversed and remanded for entry of judgment for appellant.

**LANDAU, P. J.,** concurring.

I think that the majority reaches the correct result, but for the wrong reason. The majority concludes that, although prescribing medication ordinarily is a professional service, when it is done for the purpose of obtaining sex, it is not a professional service and is therefore not subject to the professional services exclusion of a doctor's homeowner's policy. With respect, I think the majority's reasoning is flawed and is likely to lead to much mischief down the road.

Whether a particular act is a professional service depends on its nature and character, not its purpose. Thus, in *Multnomah Co. v. Oregon Auto. Ins. Co.*, 256 Or 24, 470 P2d 147 (1970), which the majority oddly relegates to passing mention in a footnote, the Supreme Court determined that the failure of a medical technician to prescribe a drug was a professional service within the meaning of a professional services exclusion provision in an insurance policy. The court held that a professional service is

"one arising out of a vocation, calling, occupation or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual rather than physical or manual. * * * In determining whether a particular act or omission is of a professional nature, the act or omission itself must be looked to and not the title or character of the party who performs or fails to perform the act."

*Id.* at 28-29 (citations omitted).

Nowhere did the court mention propriety of purpose. That only makes sense. The propriety of the purpose of an act may bear on whether the actor was *negligent*, but it is irrelevant to whether the act triggers a duty to defend. An act that is undisputably a professional service may be undertaken for any number of purposes, proper and improper. The purpose of the act, however, does not deprive it of its professional nature. A lawyer may, for example, render legal advice for purposes of improper personal—even sexual—aggrandizement. That does not mean that the lawyer did not practice law in the process. It just means that he or she did so improperly.

As the Supreme Court held in *Oregon Auto. Ins.*, prescribing medication is a "professional service." Whether accomplished for a proper or improper purpose, it is an act that arises out of a vocation, calling, occupation, or employment that involves specialized knowledge and skill of a predominantly mental or intellectual nature. The majority errs in concluding otherwise.

In my view, the insurance company nevertheless is obliged to defend in this case. One of the allegations in the underlying negligence action is that the doctor was negligent in "[m]aintaining a sexual relationship" with someone to whom he had prescribed medication. Maintaining a sexual relationship with a patient, or a nonpatient to whom the doctor has prescribed medication, is not a professional service. Therefore, the underlying complaint contains at least one negligence allegation that triggers the insurer's duty to defend. Because a duty to defend some of the allegations of a complaint imposes a duty to defend all of the allegations of that complaint, *Timberline Equip. v. St. Paul Fire and Mar. Ins.*, 281 Or 639, 645, 576 P2d 1244 (1978), the insurer is obligated to defend the entire action, including the allegations involving improper prescriptions. I would reverse the judgment on that ground.