643 So.2d 636 (1994)
Bambi LINDHEIMER and Richard Lindheimer, Appellants,
v.
The ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellee.
No. 92-2254.
District Court of Appeal of Florida, Third District.
September 14, 1994.
*637 Proenza, White & Roberts, and H. Mark Vieth, Miami, for appellants.
Michaud, Buschmann, Fox, Ferrara & Mittelmark, and James T. Ferrara, and Scott H. Michaud, Boca Raton, Parker, Johnson, Goodwin, McGuire & Burke, and Pamela Mark Burke, and E. Clay Parker, Orlando, for appellee.
Sharon Lee Stedman, Orlando, for Florida Defense Lawyers Ass'n, as amicus curiae.
Before SCHWARTZ, C.J., and BARKDULL, HUBBART, NESBITT, BASKIN, JORGENSON, COPE, LEVY, GERSTEN and GODERICH, JJ.

ON REHEARING EN BANC
GERSTEN, Judge.
Appellants, Bambi and Richard Lindheimer (the Lindheimers), appeal a declaratory judgment in favor of the appellee, St. Paul Fire and Marine Insurance Company (St. Paul), the provider of professional liability insurance to Edward Joseph, D.D.S., an oral surgeon. We affirm because the professional liability policy does not cover acts of sexual misconduct.
Ms. Lindheimer was receiving periodontal treatment from Dr. Joseph when he sexually molested her after administering anesthesia. For the purpose of determining the existence of insurance coverage, the parties stipulated: "Dr. Joseph unnecessarily administered valium to her intravenously in order to place her in a `twilight sleep,'" and "[a]s she awoke from the effects of this anesthesia, she found Dr. Joseph touching and examining the private parts of her body and rubbing the private parts of his body against her."
The Lindheimers sued Dr. Joseph for dental malpractice, battery, and intentional infliction of emotional distress, all stemming from the alleged acts of sexual misconduct. St. Paul then filed a separate action for declaratory judgment asserting that the acts of sexual misconduct were not professional services, and thus were not covered under Dr. Joseph's insurance policy. The parties *638 filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of St. Paul.
No Florida court has addressed whether a professional liability insurance policy covers a dentist's sexual abuse. In determining whether coverage exists, we first turn to the relevant provisions of the policy which provide:
What This Agreement Covers
Liability. We'll pay amounts you or others protected under this agreement are legally required to pay as damages for covered professional liability claims. To be covered, claims must be based on events that arise out of the profession named in the Coverage Summary.
....
Individual. If you are an individual shown in the Coverage Summary, you're protected against claims that result from: Professional services that you provided or should have provided.
To analyze the scope of these provisions, the terms of the contract must be given their everyday meaning and read in light of the skill and experience of ordinary people. See Morrison Assurance Co. v. School Bd. of Suwannee County, 414 So.2d 581 (Fla. 1st DCA 1982); Fontainebleau Hotel Corp. v. United Filigree Corp., 298 So.2d 455 (Fla. 3d DCA), cert. denied, 303 So.2d 334 (Fla. 1974); Sanz v. Reserve Ins. Co. of Chicago, Ill., 172 So.2d 912 (Fla. 3d DCA 1965). A reasonable and practical construction should apply in accord with the intention of the parties. Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938 (Fla. 1979); Weldon v. All American Life Ins. Co., 605 So.2d 911 (Fla. 2d DCA 1992); Senco of Florida, Inc. v. Continental Casualty Co., 440 So.2d 625 (Fla. 2d DCA 1983).
Here, the plain language of the insurance contract between St. Paul and Dr. Joseph provides coverage for claims that "arise out of the profession," or "result from professional services." Thus the insurance policy's coverage for a sexual assault depends upon whether such an act can reasonably be said to arise out of, or result from, the nature of the professional services rendered.
Whether an act results from the nature of a professional service is determined by focusing upon the particular act itself, as opposed to the character of the individual engaging in the act. See Hirst v. St. Paul Fire & Marine Ins. Co., 106 Idaho 792, 683 P.2d 440 (Idaho Ct.App. 1984); Marx v. Hartford Acc. & Indem. Co., 183 Neb. 12, 157 N.W.2d 870 (1968); Niedzielski v. St. Paul Fire & Marine Ins. Co., 134 N.H. 141, 589 A.2d 130 (1991). An insurer's liability under a professional liability policy attaches only when the professional act or service causes the alleged harm. The act or service causing the harm must be a medical or dental act, not an act or service that requires no professional skill. Roe v. Federal Ins. Co., 412 Mass. 43, 587 N.E.2d 214 (1992).
Accordingly, the fact that an act occurred in a professional's office does not automatically transmute the act into a professional service. The location of an act's occurrence is not determinative of liability. There must be some causal connection between an act and the nature of the doctor-patient relationship:
[T]he injuries allegedly suffered by [the patient] arose from a battery and not from any medical diagnosis, treatment or care by Dr. Lieberman. The battery only remotely arose from a doctor-patient relationship, that is, the only connection between the battery and the doctor-patient relationship is the fact that the battery occurred in the doctor's office. Had Dr. Lieberman assaulted Mrs. Buchanan at a bar, that act would not be considered "medical malpractice". The result should not be any different simply because of the locality of the act. (e.s.)
Buchanan v. Lieberman, 526 So.2d 969, 972 (Fla. 5th DCA), review denied, 536 So.2d 244 (Fla. 1988). See also Buckner v. Physicians Protective Trust Fund, 376 So.2d 461 (Fla. 3d DCA 1979) (insured's act of conducting a press conference not a "professional service" under policy because act was not embraced in his duty as an investigator).
Applying these concepts to the present case, we find that the dentist's sexual assault was not causally connected to the *639 provision of professional services, regardless of the "pretense of medical care used by the insured to catch his victim unaware." New Mexico Physicians Mut. Liability Co. v. LaMure, 116 N.M. 92, 860 P.2d 734, 738 (1993). When Dr. Joseph stopped providing dental treatment to Ms. Lindheimer and began sexually assaulting her, his professional services ended.
Accordingly, Dr. Joseph's sexual assault was not covered under the terms of St. Paul's professional liability policy. See St. Paul Ins. Co. of Illinois v. Cromeans, 771 F. Supp. 349 (N.D.Ala. 1991) (coverage for physician's sexual abuse of young patients was not within the contemplation of the parties and is void as against public policy); Standlee v. St. Paul Fire & Marine Ins. Co., 107 Idaho 899, 693 P.2d 1101 (Idaho Ct.App. 1984) (physician's professional liability policy did not cover liability for sexually molesting young patient in hospital); Hirst v. St. Paul Fire & Marine Ins. Co., 683 P.2d at 440 (sexual assault of minor by doctor did not constitute professional services under policy even though doctor administered drugs to render patient more susceptible to his sexual advances); Roe v. Federal Ins. Co., 587 N.E.2d at 214 (dentist's sexual assault of patient did not occur in rendering "professional services" within coverage of professional liability policy); St. Paul Fire & Marine Ins. Co. v. Quintana, 165 Mich. App. 719, 419 N.W.2d 60 (1988) (EEG technician's sexual assault of patient not covered under professional liability policy); Smith v. St. Paul Fire & Marine Ins. Co., 353 N.W.2d 130 (Minn. 1984) (physician's sexual assault of several young patients was not part of medical treatment); Niedzielski v. St. Paul Fire & Marine Ins. Co., 589 A.2d at 130 (dentist's sexual assault of patients did not result from dental services rendered); New Mexico Physicians Mut. Liability Co. v. LaMure, 860 P.2d at 734 (physician's sexual assault of patient committed during medical examination did not result from the rendering of professional services); South Carolina Medical Malpractice Liability Ins. Joint Underwriting Ass'n v. Ferry, 291 S.C. 460, 354 S.E.2d 378 (1987) (policy provided no coverage for oral surgeon who sexually assaulted patient); Standard Fire Ins. Co. v. Blakeslee, 54 Wash. App. 1, 771 P.2d 1172 (no coverage where dentist sexually assaulted patient while she was rendered semi-conscious by nitrous oxide), review denied, 113 Wash.2d 1017, 781 P.2d 1320 (1989); Steven G. by Robert G. v. Herget, 178 Wis.2d 674, 505 N.W.2d 422 (Wis. Ct. App.) (dentist's sexual assault of patients did not result from dental services rendered), review denied, 510 N.W.2d 136 (Wis. 1993).
We further find that the dentist's use of valium does not bring the sexual assault within the course of the medical treatment provided because the act causing the injury was the assault, not the use of the drugs. Where a medical professional has used anesthesia or tranquilizers to aid his sexual assault of a patient, courts have held that the professional liability policy does not provide coverage when the patient's injury was caused by the sexual assault, not by the administration of drugs. See Standard Fire Ins. Co. v. Blakeslee, 771 P.2d at 1172; Hirst v. St. Paul Fire & Marine Ins. Co., 683 P.2d at 440. Cf. St. Paul Fire & Marine Ins. Co. v. Shernow, 222 Conn. 823, 610 A.2d 1281 (1992) (professional liability policy covered dentist's medically negligent procedure in case also involving sexual assault, because medical procedure caused the injury and established the professional negligence).
In conclusion, we hold that the everyday, common meaning of "professional services" in a professional liability policy does not include sexual assaults by dentists on their patients. Moreover, denying coverage to Dr. Joseph supports the public policy that one should not be able to insure against one's own intentional misconduct. See generally Ranger Ins. Co. v. Bal Harbour Club, Inc., 549 So.2d 1005 (Fla. 1989); Everglades Marina, Inc. v. American E. Dev. Corp., 374 So.2d 517 (Fla. 1979). An insured professional should not, in any way, be insulated from the consequences of his reprehensible sexual abuse. To find otherwise would benefit the sexual abuser, a result this court will not countenance.
Turning to the cross appeal, we find that the trial court erred in ordering St. Paul to pay the Lindheimers $10,471.38 for costs incurred in their suit against Dr. Joseph. *640 First, the trial court which heard the action for declaratory relief did not have authority to award the Lindheimers costs in a separate and independent action. See Wagner v. Moseley, 104 So.2d 86 (Fla. 2d DCA 1958). Second, it was error to award costs absent a statutory basis or rule authorizing costs. While section 57.041, Florida Statutes (1993), authorizes the recovery of costs from the losing party, St. Paul was not the losing party in the declaratory action and therefore this section does not apply.
Accordingly, we affirm the order granting summary judgment and reverse the order assessing costs.
SCHWARTZ, C.J., and BARKDULL, NESBITT, JORGENSON, LEVY and GODERICH, JJ., concur.
COPE, Judge (dissenting).
I respectfully dissent. Where, as here, an insurance policy is susceptible of two reasonable interpretations, we are required to adopt the interpretation which provides insurance coverage.

I
Ms. Lindheimer was a patient of Dr. Edward Joseph, an oral surgeon. Dr. Joseph was the insured in a professional liability insurance policy issued by St. Paul.
As agreed by the Lindheimers and St. Paul, the material facts are:
Bambi Lindheimer alleges that while receiving dental treatment from Dr. Joseph on December 6, 1989, Dr. Joseph unnecessarily administered Valium to her intravenously in order to place her in a "twilight sleep." As she awoke from the effects of this anesthesia, she found Dr. Joseph touching and examining the private parts of her body and rubbing the private parts of his body against her. The Lindheimers filed suit against Dr. Joseph for dental malpractice, battery, and intentional infliction of emotional distress, all stemming from Dr. Joseph's sexual misconduct. The parties stipulate that the foregoing allegations should be accepted as true for the purposes of this Court's determination of the insurance coverage issues presented in this action for declaratory relief.
While the Lindheimers' tort action was pending against Dr. Joseph, St. Paul filed a declaratory judgment action, contending that there was no coverage available under the professional liability insurance policy for damages arising out of the alleged sexual misconduct. The Lindheimers, Dr. Joseph, and St. Paul entered into a settlement agreement for the underlying tort action. Pursuant to that agreement, the Lindheimers were paid $25,000. The agreement provided that the Lindheimers would receive an additional $50,000 payment if it were determined in the declaratory judgment action that there is coverage under the professional liability insurance policy.
In the declaratory judgment action the parties filed cross-motions for summary judgment. The trial court ruled that there was no insurance coverage, and the Lindheimers have appealed.
The professional liability policy provides, in part:
What This Agreement Covers
Liability. We'll pay amounts you or others protected under this agreement are legally required to pay as damages for covered professional liability claims. To be covered, claims must be based on events that arise out of the profession named in the Coverage Summary.
....
Individual. If you are an individual shown in the Coverage Summary, you're protected against claims that result from: Professional services that you provided or should have provided.
The insurance policy has no exclusion for intentional acts. Dr. Joseph's profession was identified in the Coverage Summary as oral surgeon.
In the present case Ms. Lindheimer went to Dr. Joseph for the rendition of professional services, namely, a root canal and periodontal services. During the course of those services, Dr. Joseph unnecessarily administered anesthesia which immobilized Ms. Lindheimer. He then performed acts of sexual misconduct.
*641 The dispute between the parties is whether Ms. Lindheimer's claim "result[s] from ... Professional services that [the dentist] provided... ." The patient argues that she was in Dr. Joseph's office for the performance of professional services: a root canal and periodontal services. The doctor administered anesthesia  a professional service  so as to immobilize her and make impermissible sexual contact. The patient argues that her claim clearly "result[s] from ... Professional services that [the dentist] provided," and is therefore a covered claim within the meaning of the policy.
The insurer argues that each of Dr. Joseph's separate acts must be evaluated to determine if each discrete act was a "professional service."[1] The insurer contends that while Dr. Joseph's other acts in the treatment room were directed toward the performance of the root canal and periodontal services, the acts of sexual misconduct are not "professional services." The insurer argues that sexual misconduct has no legitimate connection to the practice of oral surgery, and therefore those discrete acts are excluded, even though they occurred during the course of treatment for a root canal and periodontal services, and were made possible by the administration of anesthesia.
The case must be resolved under the familiar principles pertaining to the construction of insurance contracts:
The law of Florida is well-settled that a contract of insurance prepared by an insurance company must be construed liberally in favor of the insured and strictly against the insurance carrier. Where the terms of an insurance contract are susceptible of two reasonable constructions, that interpretation which will sustain coverage for the insured will be adopted.

Tropical Park, Inc. v. United States Fidelity & Guaranty Co., 357 So.2d 253, 256 (Fla. 3d DCA 1978) (emphasis added; citations omitted); accord, e.g., Bankers Life & Casualty Co. v. Vadra, 563 So.2d 200, 201 (Fla. 3d DCA 1990); Shelby Mutual Ins. Co. v. Manchester, 376 So.2d 266, 268 (Fla. 3d DCA 1979), cert. denied, 388 So.2d 1118 (Fla. 1980).
Here, the Lindheimers' reading of the policy language is a permissible and reasonable one which sustains coverage. Ms. Lindheimer hired Dr. Joseph to perform professional dental services. Dr. Joseph administered anesthesia  a professional service. While Ms. Lindheimer was in twilight sleep, the doctor engaged in sexual misconduct. Certainly Ms. Lindheimer's claim can be viewed as a claim "that result[s] from ... Professional services that [the dentist] provided... ." While the policy could also be read narrowly as the insurer asserts, Florida law requires that we accept the interpretation which provides insurance coverage.[2]See Tropical Park, Inc. v. United States Fidelity & Guaranty Co., 357 So.2d at 256; see also St. Paul Fire & Marine Ins. Co. v. Asbury, 149 Ariz. 565, 720 P.2d 540, 541 (Ariz. Ct. App. 1986); cf. St. Paul Fire & Marine Ins. Co. v. Shernow, 222 Conn. 823, 610 A.2d 1281 (1992) (coverage existed where claim was made for sexual misconduct and for physical injury resulting from doctor's administration of excessive anesthesia).
The insurer relies on several out-of-state decisions which take a narrow view of insurance policy language of this general type. See Roe v. Federal Ins. Co., 412 Mass. 43, 587 N.E.2d 214 (1992); Niedzielski v. St. Paul Fire & Marine Ins. Co., 134 N.H. 141, 589 A.2d 130 (1991); Standard Fire Ins. Co. v. Blakeslee, 54 Wash. App. 1, 771 P.2d 1172 (App.), review denied, 113 Wash.2d 1017, 781 P.2d 1320 (1989); South Carolina Medical Malpractice Liability Ins. Joint Underwriting Ass'n v. Ferry, 291 S.C. 460, 354 S.E.2d 378 (1987); Hirst v. St. Paul Fire & Marine *642 Ins. Co., 106 Idaho 792, 683 P.2d 440 (Idaho Ct.App. 1984).[3] Those authorities do not supplant Florida principles governing the interpretation of insurance contracts.

II
The majority also suggests that to provide insurance coverage in this case would offend public policy. That issue is controlled by Ranger Insurance Co. v. Bal Harbour Club, Inc., 549 So.2d 1005 (Fla. 1989):
In determining whether a particular policy of civil liability insurance is opposed to public policy, we look to two factors: the conduct of the insured (is it a type that will be encouraged by insurance?), and the purpose served by the imposition of liability for that conduct (is it to deter wrongdoers or compensate victims?).
Id. at 1007 (citation omitted).
As to the first factor, it is beyond belief that the existence of dental liability insurance had any influence whatsoever on the dentist's conduct. He was undeterred by the fact that sexual battery is a crime and is misconduct for which he could lose his license. That being so, it cannot reasonably be supposed that the doctor's conduct was influenced in the slightest by the existence of insurance. As to the second factor, the purpose of the imposition of liability for dental malpractice is principally for the compensation of the malpractice victim.[4]See id. at 1008-09. The award here is compensatory, not punitive. A finding of coverage in this case would be consistent with Ranger.

III
The final judgment should be reversed and the cause remanded with directions to enter judgment for the Lindheimers. The Lindheimers concede that in the event of reversal as to the appeal, there should also be a reversal with respect to the cross-appeal.
HUBBART and BASKIN, JJ., concur.
NOTES
[1] According to one treatise:

In its usual connotation, "professional services" within a professional liability policy means services performed by one in the ordinary course of practice of his profession, on behalf of another, pursuant to some agreement, expressed or implied, and for which it could reasonably be expected that some compensation would be due.
John A. Appleman, Insurance Law and Practice (Berdal ed.), § 4503, at 304 (1979) (footnote omitted).
[2] The insurer is free to amend its policy at any time to limit or exclude coverage for acts of sexual misconduct. The question on this appeal is how to interpret the policy as presently written.
[3] The definition on which these cases principally rely was articulated in Marx v. Hartford Accident & Indemnity Co., 183 Neb. 12, 157 N.W.2d 870, 871-72 (1968). Ironically, that definition was developed in order to distinguish between patient-related and non-patient-related services. In Marx, there was an explosion when a technician poured benzene into a hot water sterilizer. There were no patients on the premises at the time, and the incident did not relate to the rendering or failure to render professional services to a patient.
[4] The insurance contract at issue here is a professional liability insurance policy. Under one standard definition, professional malpractice is:

Professional misconduct or unreasonable lack of skill... . Failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss or damage to the recipient of those services. .. . It is any professional misconduct, unreasonable lack of skill or fidelity in professional or fiduciary duties, evil practice, or illegal or immoral conduct.
Black's Law Dictionary 959 (6th ed. 1990) (emphasis added; citation omitted). As commonly understood, professional malpractice includes intentional misconduct, as well as negligent acts, in the rendition of professional services.