998 So.2d 1151 (2008)
STATE FARM FLORIDA INSURANCE COMPANY, Appellant,
v.
Sarah CAMPBELL, Ronald Campbell, et al., Appellees.
No. 5D07-2358.
District Court of Appeal of Florida, Fifth District.
November 7, 2008.
*1152 Elizabeth K. Russo of Russo Appellate Firm, P.A., Miami, and Harris Brown, P.A., Jacksonville, for Appellant.
John S. Mills of Mills Creed & Gowdy, P.A., and Joseph V. Camerlengo of Camerlengo & Brockwell, P.L., Jacksonville, for Appellees, Sarah Campbell and Ronald Campbell.
Joseph E. Brooks and Stephen M. Masterson of Smith, Brooks & Masterson, P.L., Tallahassee, for Appellee, Beth Pearce, D.P.M., P.A.
R.J. Larizza and Alex Zaharias of Law Office of R.J. Larizza, P.A. & Associates, St. Augustine, for Appellee, Brett Cutler, D.P.M., P.A.
COHEN, J.
We are called upon to interpret an exclusionary provision in a business insurance policy. The issue for our determination is whether the act of positioning a patient's foot to take an x-ray falls within a policy provision excluding coverage for injuries "due to" the rendering of professional services. We find it does and reverse.
Sarah Campbell, Appellee,[1] was a patient at the podiatric practice of Beth Pearce, DPM, P.A. and Brett Cutler, DPM, P.A. On March 27, 2002, Campbell complained of heel pain and Dr. Pearce ordered an x-ray of her foot be taken. While a certified x-ray technician was positioning her foot to take the x-ray, Campbell lost her balance and fell backward.[2] Campbell filed suit asserting negligence *1153 against Beth Pearce, DPM, P.A. and Brett Cutler, DPM, P.A. Dr. Cutler and Dr. Pearce submitted these claims to their professional liability insurer, Podiatry Insurance Company of America, Inc. Dr. Cutler also submitted Campbell's claims to State Farm Florida Insurance Company, Appellant, under his business liability policy. State Farm subsequently sought a declaratory judgment that it was not required to cover or defend against Campbell's claim. Finding that her claim was not excluded by the policy, the trial court entered summary judgment in favor of Campbell.
The interpretation of an insurance contract is reviewed de novo. State Farm Mut. Auto. Ins. Co. v. Parrish, 873 So.2d 547, 549 (Fla. 5th DCA 2004); Roberts v. Fla. Lawyers Mut. Ins. Co., 839 So.2d 843, 845 (Fla. 4th DCA 2003) (the construction of an insurance policy to determine the scope of coverage is a question of law reviewed de novo). The scope of an insurance policy's coverage is defined by the plain language in the policy. Auto-Owners Ins. Co. v. Anderson, 756 So.2d 29, 34 (Fla.2000). When interpreting an insurance contract, it "must be read in light of the skill and experience of ordinary people, and given [its] everyday meaning." Thomas v. Prudential Prop. & Cas., 673 So.2d 141, 142 (Fla. 5th DCA 1996); Lindheimer v. St. Paul Fire & Marine Ins. Co., 643 So.2d 636, 638 (Fla. 3d DCA 1994).
If an insurance policy is ambiguous, any ambiguities are interpreted liberally in favor of the insured and strictly against the insurer. Auto-Owners Ins. Co. v. Anderson, 756 So.2d at 34. An insurance policy is ambiguous when the language is susceptible to two reasonable interpretations: one providing coverage, the other limiting coverage. Flores v. Allstate Ins. Co., 819 So.2d 740, 744 (Fla. 2002). Similarly, provisions limiting or avoiding liability are interpreted liberally in favor of the insured and strictly against the insurer. Id. Exclusionary provisions are "construed even more strictly against the insurer than coverage clauses." Id. However, a provision that is clear and unambiguous "should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co., 913 So.2d 528, 532 (Fla.2005) (quoting Hagen v. Aetna Cas. & Sur. Co., 675 So.2d 963, 965 (Fla. 5th DCA 1996)).
The policy provision in dispute is commonly known as a "professional services exclusion" and states:
Business Liability Exclusions
Under Coverage L, this insurance does not apply:
10. to bodily injury, property damage or personal injury due to rendering or failure to render any professional services or treatments. This includes but is not limited to:
d. medical, surgical, dental, x-ray, anesthetical or nursing services or treatments, but this exclusion only applies to an insured who is engaged in the business or occupation of providing any of these services or treatments.
The trial court interpreted "due to" to mean "caused by." It reasoned that Campbell's injury was not caused by rendering professional services because it occurred while her foot was being positioned, not by an x-ray malfunction. The trial court found that positioning Campbell's foot was simply a preparation for taking the x-ray which "is different from the actual rendering of a service." Thus, the trial court concluded that the injury "clearly" was not due to rendering professional services, "but instead appears to be caused by the condition of the premises," citing Mobley v. Gilbert E. Hirschberg, P.A., 915 *1154 So.2d 217 (Fla. 4th DCA 2005); Tenet St. Mary's Inc. v. Serratore, 869 So.2d 729 (Fla. 4th DCA 2004); Southern Baptist Hospital of Florida, Inc. v. Ashe, 948 So.2d 889 (Fla. 1st DCA 2007).
The trial court also concluded that the language of the professional services exclusion was subject to two reasonable interpretations because the policy did not indicate that it excluded "anything conducive to the professional service nor does it state it excludes preparation for the service." The trial court resolved this ambiguity in favor of the insured. Based on these conclusions, the trial court entered summary judgment against State Farm.
In relevant part, State Farm's policy excludes coverage for personal injuries "due to rendering" professional services or treatments. As defined by the policy, professional services include x-ray services. Thus, the key inquiry to determining whether State Farm's policy excludes Campbell's claim is whether her injury was "due to rendering" x-ray services. This necessarily involves determining whether the act of positioning Campbell's foot, before the x-ray was taken, is "rendering" x-ray services. As defined by the dictionary, "due to" means "owing or attributable." Webster's New Universal Unabridged Dictionary 562 (2d ed. 1983). "Render" means "to give or provide; to do." Id. at 1530. Thus, if Campbell's injury was owing or attributable to the giving, providing, or doing of x-ray services, it is excluded by the plain language of the policy.
Whether an act arises from the providing of a professional service is "determined by focusing upon the particular act itself," not the character of the individual performing the act. Lindheimer v. St. Paul Fire & Marine Ins. Co., 643 So.2d at 638. To be excluded, the act or service must be a medical act, not one that requires no professional skill. Id. That the act or service occurred in a professional's office is not determinative, the act or service must be causally connected to the professional service being provided. Id.
In concluding that Campbell's claim was not excluded by the policy, the trial court determined that Campbell's injury was not caused by an x-ray machine malfunction, but rather "appears to be caused by the condition of the premises." The trial court also characterized positioning the foot as simply "preparation for a service." These conclusions are undermined by two critical, undisputed facts. First, Campbell was injured while her foot was being positioned so that an x-ray could be taken. Second, the patient must be properly positioned to take an x-ray. Thus, as a matter of fact, the act of positioning Campbell's foot was causally connected to taking the x-ray. Consequently, as a matter of logic, the act of positioning Campbell's foot must be encompassed within the term "x-ray services." The cases cited by the trial court, Mobley v. Gilbert E. Hirschberg, P.A., 915 So.2d 217; Tenet St. Mary's Inc. v. Serratore, 869 So.2d 729; and Southern Baptist Hospital of Florida, Inc. v. Ashe, 948 So.2d 889, do not compel a contrary conclusion.
In each of the cases cited by the trial court, it was clear that a medical service was not being provided. In Mobley v. Gilbert E. Hirschberg, P.A., 915 So.2d at 218, the patient was injured after the arm of an x-ray machine struck her in the face after the dental assistant tugged on it to dislodge it because it was jammed. In Tenet St. Mary's Inc. v. Serratore, 869 So.2d at 730, the patient was injured after an employee kicked her foot while attempting to return the chair the patient was sitting in to its upright position by kicking the footrest. Similarly, the plaintiff in Southern Baptist Hospital of Florida, Inc. v. Ashe, 948 So.2d at 891, alleged *1155 that the hospital was negligent in releasing her daughter in violation of the Baker Act. These actions were clearly not integral or causally related to the treatment provided to the patient. In stark contrast, positioning Campbell's foot was integral to taking an x-ray because without the proper positioning, an x-ray could not have been taken.
These cases are likewise limited in their applicability because the issue was whether the complaint alleged a claim for medical malpractice and thus, was subject to Chapter 766's, Florida Statutes, pre-suit notice requirements. In contrast, the issue in this case is a matter of contract interpretation: whether positioning Campbell's foot is "rendering x-ray services," not whether Campbell must provide pre-suit notice. To the extent these cases are persuasive, they determine whether a claim arises out of providing medical services, i.e., medical malpractice, by looking at the allegations of the complaint. Campbell's complaint, in relevant part, alleges that she lost her balance and fell while positioning herself on the x-ray table when the attending nurse, acting under the direction of Dr. Cutler, twisted her leg. This allegation supports the conclusion that her injury was sustained while medical or x-ray services were being performed.
The inclusion of the word "services" within the contract clearly encompasses more than just taking an x-ray. Appellees recognize as much when they concede that Campbell's claim would be excluded from coverage if her claim involved injuries stemming from a misdiagnosis because her foot was not positioned properly. This conclusion does not leave Campbell without a potential remedy for the injuries sustained. However, that remedy does not include recovery under State Farm's business liability policy.
We REVERSE for entry of summary judgment in favor of the Appellant, State Farm.
MONACO and EVANDER, JJ., concur.
NOTES
[1] Campbell's husband also joined in this appeal based on his loss of consortium claim. For ease of reference, both are collectively referred to as "Campbell."
[2] There is some dispute whether it was Dr. Cutler or the x-ray technician who was positioning or directing Campbell to position her foot. Both were present at the time. The parties concede this factual dispute is not relevant because the critical issue is whether State Farm's policy covers the injuries sustained by Campbell.