[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14555
Non-Argument Calendar
_____

D.C. Docket No. 1:18-cv-22383-KMW


ANGEL HUNTER,

Plaintiff - Appellant,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 8, 2020)

Before FAY, JORDAN, and NEWSOM, Circuit Judges.

PER CURIAM:

After a visit to Banyan Community Health Center, a Department of Health and Human Services-operated facility located in Miami, Florida, Angel Hunter brought suit against the United States under the Federal Tort Claims Act (FTCA). She alleged that during her visit, her treating physician Dr. Francisco Solis made "seductive" comments and inappropriately touched her, and that, as a result, Banyan (*i.e.*, the United States) should be held liable for negligent training and supervision, as well as intentional infliction of emotional distress.

The district court granted summary judgment for the Government. While acknowledging "the importance of legal recourse with respect to issues of sexual misconduct," the court held that it lacked jurisdiction under the FTCA to resolve Hunter's claims. We agree and so will affirm.

## I

We briefly recite the facts familiar to the parties.[1] Angel Hunter first became a patient at Banyan Community Health Center in January 2015. For the next two years, Dr. Francisco Solis served as her primary care physician. During this time, Hunter visited Banyan nine times, complaining of various pain-related ailments, and of those nine visits, she was treated by Dr. Solis seven times. Dr.

---

[1] Because Hunter appeals the district court's grant of summary judgment for the Government, we summarize the facts in the light most favorable to Hunter.

Solis prescribed her several pain medications, including ibuprofen, omeprazole, methimazole, and tapazole.

On October 13, 2017, Hunter once again went to Banyan as a walk-in patient. During that visit, Dr. Solis made sexually suggestive comments and touched Hunter inappropriately. For instance, Dr. Solis alluded to seeing Hunter again afterwards: "I want to see you again tonight, all right? I'll come over to your house, I'ma check on that back pain. . . ." During the same appointment, after Hunter remarked that she was running late, Dr. Solis cracked, "On your period? Is it mine? . . . It's not mine, not yet. . . ." In addition to these lewd remarks, Dr. Solis repeatedly touched her legs, attempted to kiss her, and on her way out, slapped her rear end—despite Hunter's repeated requests to stop touching her.

After exhausting her administrative remedies, Hunter timely sued the United States under the Federal Tort Claims Act (FTCA) in the U.S. District Court for the Southern District of Florida. The FTCA provides that "the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages . . . caused by the negligent or wrongful act or omission of any employee of the Government *while acting within the scope of his office or employment*." 28 U.S.C. § 1346(b)(1) (emphasis added). Hunter's amended complaint ultimately contained two counts. First, she claimed that Banyan

negligently trained and supervised its employees.  Second, she claimed intentional infliction of emotional distress.  The parties both moved for summary judgment.

The district court granted the Government's motion, determining that it lacked subject matter jurisdiction under the FTCA because Dr. Solis's actions did not occur within the scope of his employment.[2]  Because it dismissed for lack of jurisdiction, the court did not consider any other claims.  This appeal followed.

## II

We review *de novo* the district court's grant of summary judgment for lack of subject matter jurisdiction.  *Woodruff v. U.S. Dep't of Labor, Office of Workers Compensation Program*, 954 F.2d 634, 636 (11th Cir. 1992).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

---

[2] The district court also conducted its analysis under the Federally Supported Health Centers Assistance Act of 1995 (FSHCAA), 42 U.S.C. § 233(a).  But section 233(a) is an "exclusiveness of remedy" provision, not a jurisdictional provision.  It makes the "remedy against the United States provided by section[] 1346(b) . . . of title 28 . . . exclusive of any other civil actions . . . by reason of the same subject-matter against the officer or employee . . . whose act or omission gave rise to the claim."  Our review of jurisdiction is thus based on section 1346(b) of the FTCA, not section 233(a) of the FSHCAA.

## III

Generally, sovereign immunity shields the United States from suit by a private citizen. *Zelaya v. United States*, 781 F.3d 1315, 1321 (11th Cir. 2015). But the FTCA waives sovereign immunity for tort suits based on state law tort claims against "any employee . . . while acting within the scope of his office or employment." 28 U.S.C. §§ 1346(b)(1), 2674; *Zelaya*, 781 F.3d at 1322. In the absence of a cause of action under the FTCA, however, the United States preserves its sovereign immunity, and the district court lacks jurisdiction to adjudicate the case.

Hunter argues that the district court erred in finding that it lacked jurisdiction. First, she contends that there was evidence from which the court could have inferred that Dr. Solis was acting within the scope of his employment. Second, she argues that even if Dr. Solis was not acting within the scope of employment, the district court still could have imposed vicarious liability against Banyan under the "agency-relation" exception to the general rule that an employer is not liable for the torts of employees committed outside the scope of employment. We address these arguments in turn.

## A

"[W]hether an employee's actions are within the scope of his employment for purposes of the [FTCA] is an issue governed by the law of the state where the

incident occurred." *S.J. & W. Ranch, Inc. v. Lehtinen*, 913 F.2d 1538, 1542 (11th Cir. 1990), *amended*, 924 F.2d 1555 (11th Cir. 1991).  Because the incident here occurred in Florida, that state's law governs.  Under Florida law, an employee's conduct is "within the course and scope of employment when it (1) is of the kind the employee is hired to perform, (2) occurs substantially within the time and space limits authorized or required by the work to be performed, and (3) is activated at least in part by a purpose to serve the master." *Goss v. Human Servs. Assocs., Inc.*, 79 So. 3d 127, 132 (Fla. 5th DCA 2012).

Applying this three-part test, Florida courts have generally held sexual torts to be outside the scope of employment.  *Id.*  For instance, in *Hammer v. Lee Memorial Health System*, though the perpetrator's position as a nurse enabled his sexual assault, the court nonetheless held the assault outside the scope of employment because the assault was a "self-serving act that in no way furthered the business" of the hospital.  2018 WL 3707832, at *4 (M.D. Fla. Aug. 3, 2018).

As it was in *Hammer*, so it is here.  Dr. Solis's actions were neither of the kind that he was hired to perform nor were they motivated in any way by a purpose to serve Banyan.  In fact, Dr. Solis's distasteful remarks and touching violated Banyan's policies and procedures.  As Dr. Solis admitted in deposition testimony, he was aware of Banyan's policies against sexual harassment and sexual relations with patients.  Banyan's policies further made explicit that sexual harassment

6

included "verbal conduct making or using derogatory comments, epithets, slurs or jokes" and "physical conduct that includes touching." Because Dr. Solis's admittedly inappropriate and "embarrassing" conduct contradicted Banyan's employment expectations, his actions were not of the kind he was hired to perform or motivated to serve Banyan.

Hunter makes two arguments in response. First, Hunter argues that Dr. Solis's conduct fell within the scope of his employment because it was an attempt to "deescalate" her when she came into Banyan as a walk-in and insisted on being seen for treatment. Second, Hunter argues that Dr. Solis's actions were part of a "misguided effort to provide medical treatment." In particular, Hunter contends that because Dr. Solis suspected that she was a prescription-medication addict, and addicts often have low self-esteem, Dr. Solis's comments were meant to bolster her self-esteem and thus address her addiction.

We are not persuaded. Even taking the facts in the light most favorable to Hunter, it blinks reality to suggest that jokes about "check[ing]" on her back pain that night or about her period were intended to mollify Hunter or bolster her confidence. Hunter has also presented no evidence suggesting any aggression in her October 2017 visit that would support her de-escalation theory. Nor does Hunter's de-escalation theory accord with facts in the record. For instance, it does

7

not explain why Dr. Solis's behavior was not limited to their initial encounter (her walk-in), but instead continued throughout their appointment.

Hunter's addiction-treatment theory is also not plausible. Taking the facts in the light most favorable to Hunter, we disagree that Dr. Solis was motivated in part to treat Hunter's addiction. Hunter does not contend, and the record does not show, that Dr. Solis had previously been treating her for addiction. To the contrary, he repeatedly prescribed her various pain medications. To be sure, some evidence in the record suggests that Dr. Solis recognized that Hunter might have been addicted to medication. But Dr. Solis's speculation about Hunter's addiction alone does not create a genuine issue of material fact such that a reasonable jury could find that his actions were motivated by his desire to provide medical treatment, and thus serve Banyan.

To support her claims, Hunter cites *Hennagan v. Department of Highway Safety and Motor Vehicles*, 467 So. 2d 748 (Fla. 1st DCA 1985), and *Forster v. Red Top Sedan Service, Inc.*, 257 So. 2d 95 (Fla. 3d DCA 1972). In *Hennagan*, taking the allegations as true on a motion to dismiss, the court recounted that a police officer detained a minor on suspicion of shoplifting. 467 So. 2d at 749. In the course of the detainment, the officer drove the minor to an obscure location and sexually molested her. *Id.* The court held that at least at the preliminary motion-to-dismiss stage, it was "not impossible to attribute the alleged actions of Trooper

8

Jones, at least in part, to misfeasance and/or overzealousness in the performance of his official duties." *Id.* at 751.  But it acknowledged that "[o]n the more stringent test of summary judgment . . . these matters may be resolved adversely to plaintiff." *Id.  Hennagan* is contrary to the weight of Florida authority.  *See Hammer*, 2018 WL 3707832, at \*4; *Hemmings v. Jenne*, 2010 WL 4005333, at \*5 (S.D. Fla. Oct. 12, 2010); *Elders v. United Methodist Church*, 793 So. 2d 1038, 1041 (Fla. 3d DCA 2001); *Mason v. Fla. Sheriffs' Self-Ins. Fund*, 699 So. 2d 268, 270 (Fla. 5th DCA 1997); *cf. Lindheimer v. St. Paul Fire & Ins. Co.*, 643 So. 2d 636, 638-39 (Fla. 3d DCA 1994).  And in any case, *Hennagan* was decided on a motion to dismiss.  Here, on "the more stringent test of summary judgment," *Hennagan*, 467 So. 2d at 751, we find that Hunter has not provided evidence that creates a genuine issue of material fact about whether Dr. Solis was at least in part motivated to serve Banyan.

*Forster* does not help Hunter, either.  On a motion for directed verdict, Florida's Third District Court of Appeals held that a bus driver who ran another driver off the road and yelled at him for holding him up could have been acting in his employer's interests by attempting to perform his duties on schedule.  *Forster*, 257 So. 2d at 96-97.  But given the driver's explicit statement in the course of his tirade that "no 'old bastard' would delay his schedule and 'hold him up from getting to the Beach,'" the inference that the driver was acting to serve the bus

9

company—to stay on schedule—was far more credible than the inferences Hunter would have us make here. *See id.* at 96.

In sum, Dr. Solis's lewd comments and inappropriate touching fell outside the scope of his employment, and Hunter's contentions to the contrary fail to create a genuine issue of material fact.

**B**

Hunter argues that even if Dr. Solis was not acting within the scope of his employment, we retain jurisdiction under the "agency-relation" exception—an exception to the general rule that a claim of vicarious liability requires that an employee have acted within the scope of his employment. It provides that "[t]he acts of an agent, performed within the scope of his real or apparent authority, are binding upon his principal." *Indus. Ins. Co. of N.J. v. First Nat'l Bank of Miami*, 57 So. 2d 23, 26 (Fla. 1952); *see also* Rest. (2d) of Agency, § 219(2)(d) ("A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless: . . . the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation."). For instance, in *Industrial Insurance Co. of New Jersey*, the Florida Supreme Court held a bank liable for fraud based on the actions of its agent because the bank held the agent

out as acting on its behalf and third parties had no reason to believe that the agent was not acting on behalf of the bank.  57 So. 2d at 26.

As an initial matter, we are not sure either that Hunter properly preserved this argument for appeal or that the FTCA imports the agency-relation exception through the phrase "acting within the scope of his office or employment."  But even assuming (without deciding) that Hunter properly preserved her agency-relation argument by citing § 219 of the Restatement (Second) of Agency in the district court, and even assuming (again, without deciding) that the agency-relation exception is part of the state law that the FTCA incorporates, we conclude that the exception does not apply here.

Hunter argues that because Banyan also employed Dr. Solis as its medical director, it empowered him to "use or abuse his position to accomplish the harassment."  But Dr. Solis's role as medical director is neither here nor there.  His actions occurred in the context of his capacity as a physician, and in that role, he did not act with Banyan's apparent authority.  And unlike *Industrial Insurance Company of New Jersey*, where the bank put forward its agent as acting on its behalf, Hunter presents no evidence that Banyan held Dr. Solis out as acting on its behalf when he provided medical services to Hunter.  Here, no one would have believed that Dr. Solis was acting on behalf of Banyan in his role as medical director as opposed to his capacity as a doctor.

11

## IV

The district court's order is **AFFIRMED.**